IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| PORT HAMILTON REFINING & TRANSPORTATION, LLLP, <br><br> PLAINTIFF, <br><br> VS. <br><br> NATIONAL INDUSTRIAL SERVICES, LLC <br><br> DEFENDANT. | CASE NO. 1:24-CV-00023 <br><br> ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION |

DECLARATION OF DAVID JOHNSON IN
SUPPORT OF THE EXTENSION OF THE TEMPORARY RESTRAINING ORDER

1. My name is David Johnson and I am a Board Member and Director of Port Hamilton Refining and Transportation, LLLP ("Port Hamilton").

2. I am making this declaration on St. Croix; am over the age of majority; have personal knowledge of the facts stated herein; and am otherwise competent to make this declaration.

3. Port Hamilton has been engaged in an over two-and-a-half-year process to attract investors that will allow it to restart the refinery.

4. That process suffered a substantial setback when in November 2023 the Environmental Protection Agency issued an order that would have had the effect of preventing the refinery from restarting.

5. The practical effect of that order was to cause the investors we were dealing with at the time to terminate discussions until the EPA issue was resolved.

6. Although Port Hamilton was successful in challenging the EPA, *see Port Hamilton Ref. & Transportation, LLLP v. U.S. Env't Prot. Agency*, 75 F.4th 166, 167 (3d Cir.), *reh'g granted*, 86 F.4th 1031 (3d Cir. 2023), *and on reh'g*, 87 F.4th 188 (3d Cir. 2023) until the time for seeking *certiorari* from the U.S. Supreme

1

**Exhibit 2**

Court expired in February 2024, investors steered clear of Port Hamilton.

7. Within the last two weeks, Port Hamilton was finally able to enter into two non-exclusive letters of intent with potential investors who would fund a restart of the refinery. Port Hamilton is in negotiations with both and the investors are doing their due diligence.

8. Port Hamilton has inquired of scaffold manufacturers about how long it would take to obtain the scaffolding that would be needed for the preparations for restarting the refinery and has been told that the lead time would be a minimum of four months for the type of scaffolding the refinery requires. This is an enormous amount of scaffolding and is not simply available out of a manufacturer's inventory.

9. Once the scaffolding is manufactured, it would need to be shipped to St. Croix, which would take a minimum of two to three weeks depending upon the availability of shipping space on cargo ships and their sailing schedules.

10. A delay of 4-5 months because of the loss of Port Hamilton's scaffolding would in all likelihood cause the two current investors, and other potential investors with whom Port Hamilton is negotiating, to walk away from the deal.

11. A loss of the investors at this point would likely have the same effect as the EPA order and cause investors to stand down until they are confident that Port Hamilton has the scaffolding it needs to begin the work needed to begin the restart process.

12. The costs of such delay are virtually incalculable because of the numerous factors that investors consider when making investment decisions including, without limitation, the U.S. economy; the value of the dollar; the cost of crude oil and the margin for refined products; the availability of investment funds that may have been diverted to other investments; and the political climate both in Washington D.C. and locally.

I declare, subject to the penalties of perjury, that the foregoing statements of fact are true and correct.

_____
David Johnson

**Exhibit 2**