IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| PORT HAMILTON REFINING & TRANSPORTATION, LLLP, <br><br> PLAINTIFF, <br><br> VS. <br><br> NATIONAL INDUSTRIAL SERVICES, LLC <br><br> DEFENDANT. | CASE NO. 1:24-CV-00023 <br><br> ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION |

PORT HAMILTON'S REPLY TO NIS'S OPPOSITION TO
EMERGENCY MOTION TO EXTEND TEMPORARY RESTRAINING ORDER

National Industrial Services, LLC ("NIS") begins its opposition to Port Hamilton

Refining & Transportation, LLLP's ("Port Hamilton"), motion for an emergency order

extending the Superior Court's temporary restraining order by complaining that it has

been 31 days since the TRO was issued and it "has still not been properly heard on this

matter." NIS Opposition Memorandum ("Opp. Mem.") at 1. But NIS fails to inform the

Court that the only reason it has not been heard is because of its own delaying tactics.

First, the Superior Court issued the TRO on August 23, 2024 and scheduled an

evidentiary hearing for five days later, on August 28, 2024. *See* Doc. No. 1-6 at ECF

p.11. At that evidentiary hearing, when the Superior Court announced that it was

going to take a jurisdictional objection orally raised by NIS under advisement and

proceed to the evidentiary hearing on the motion for preliminary injunction, NIS

announced that it was not prepared to proceed. Exhibit 3,[1] Declaration of Andrew C. Simpson at ¶¶4–7. The Superior Court obtained NIS's consent to extend the TRO until the next date it had available for a preliminary injunction hearing, September 18, 2024. NIS expressly agreed to that extension. *Id.* at ¶¶8–9.

Second, at the September 18, 2024 hearing, NIS again stymied efforts to go forward with the evidentiary hearing by waiting to see how the Superior Court would rule on the jurisdictional issue and then, after learning that the ruling was adverse to it, announcing that it intended to remove the case to this Court within the hour. *See* Doc. No. 11-1 at 47–48. NIS then proceeded with the removal, which prevented the Superior Court from holding the evidentiary hearing. However, prior to the removal being accomplished, the Superior Court agreed to extend the TRO until September 25, 2024 in order to allow this Court to reach its own decision as to whether to extend the TRO further. *Id.* at 76–77.

NIS's complaint about the length of time it has been enjoined is a classic example of being hoist by one's own petard.

## I.    NIS'S EFFORT TO UPEND THE STATUS QUO BY DELAYING A DECISION BEYOND THE DATE THE TRO EXPIRES IS FLAGRANT GAMESMANSHIP

If NIS was agreeable to extending the TRO for a sufficient amount of time to (a) allow this Court to rule on its motion to transfer (which is not yet fully briefed) and (b) if the motion is granted, allow the transferee court to consider whether to extend the

---

[1] Exhibits 1 and 2 were submitted with Port Hamilton's memorandum in support of motion. It is numbering exhibits serially, and thus the first exhibit to this Reply is Exhibit 3.

TRO, it's argument to decide the motion to transfer first would at least be colorable. But what NIS seeks is to run out the clock on the TRO so that by the time the motion to transfer is ruled upon, the damage—dissolution of the TRO—will have been done and it will no longer be possible to preserve the status quo. This Court should not be fooled by such gamesmanship. And Port Hamilton should not be prejudiced by such gamesmanship.

## II. PORT HAMILTON HAS NOT MISSTATED THE PROCEDURAL POSTURE OF THE CASE.

NIS engages in the ultimate chutzpah by accusing Port Hamilton (in the heading of Part II of its opposition memorandum) of "knowingly misstating the procedural posture" of the case and then, (a) failing to provide any example of a misstatement—let alone a knowing misstatement—by Port Hamilton and (b) simultaneously misstating the procedural posture. It does the latter by repeating its now familiar refrain that complains about the length of time the TRO has been in place while failing to inform the Court that the TRO was extended—by agreement of NIS— from August 28, 2024 until September 18, 2024 because NIS was not prepared to go forward at the August 28, 2024 evidentiary hearing. NIS also fails to explain that the TRO was then extended again to prevent NIS from using a procedural device—removal to this Court—to get around the TRO. (NIS's argument that the Court should decide the transfer motion first is yet another effort to use a procedural device to get around the TRO.) The only reason the TRO has not been either upgraded to a preliminary injunction or dissolved is because NIS is using every trick in book to avoid an evidentiary hearing.

With respect to the posting of a bond, NIS's opposition memorandum is the first time it has raised the issue. In Port Hamilton's proposed order submitted to the Superior Court with original memorandum in support of motion for temporary restraining order filed with the Superior Court, Port Hamilton recognized that a bond was required; but, because the potential damage to NIS is *de minimis*, suggested the bond should be $2,000. (NIS did not include the proposed order in its removal papers (as required) and therefore a copy of the proposed order is attached as Exhibit 4.)[2] NIS did not object to Port Hamilton's proposed bond amount; claim that it was insufficient; otherwise raise the issue. Thus, Port Hamilton believes the Court should set the bond at $2,000.

### III. NIS'S ATTACK ON THE MERITS OF THE REQUIREMENTS FOR THE ISSUANCE OF A TRO IS DEVOID OF CRITICAL EVIDENCE.

Consistent with NIS's unwillingness to go forward with an evidentiary hearing where it would it have an opportunity to produce actual evidence in support of the factual assertions it puts in memoranda without any support, NIS's opposition to this motion offers no evidence to support its claim of ownership and no evidence to contradict the *verified* allegations of the complaint. NIS's claims that it "disputes" certain "factual contentions" from the verified complaint but attorney argument and

---

[2] Proposed orders are not given a "file stamp" in the Superior Court. Exhibit 4 is downloaded from the Superior Court's efiling system. It can be accessed (password required) at
https://usviefile.vicourts.org/case/document/download?courtID=3000000&documentIdentifier=4142571.

unsupported statements in a memorandum are not evidence[3]—and it offers no evidence

to challenge the veracity of the verified complaint. "Say it ain't so, Joe" might work for

a young boy disappointed by his sports hero but it does not work in a legal brief.[4]

NIS has offered exactly zero evidence to contradict Port Hamilton's claim of

ownership to the scaffolding. Thus there is absolutely nothing to undermine Port

Hamilton's evidence that it is likely to prevail on the merits.

As for irreparable injury, NIS's main claim is that it needs to secure the scaffolding

because it is hurricane season. NIS made a similar argument at the August 28 hearing.

*See* Exhibit 3, ¶¶10-11. At that hearing, Port Hamilton agreed that the scaffolding that

NIS had prepped for shipping could be further secured within the boundaries of the

refinery/terminal for hurricane purposes. *Id.* Port Hamilton also agreed that if a

hurricane was approaching and it implemented its hurricane protection plan, then NIS

could secure scaffolding that is in use within process units in accordance with that

hurricane protection plan.

Despite figuratively screaming "hurricane" in lieu of "the sky is falling" at the

August 28, 2024 hearing,  in the nearly one month since, NIS has done absolutely

nothing to further secure the scaffolding that had been prepped for shipping and there

---

[3]  *Prudential Ins. Co. of Am. v. McBean*, Case No. 3:18-cv-00016, 2020 WL 702541, at
*3 (D.V.I. Feb. 12, 2020) (Recognizing that a"memorandum is not evidence" and citing
*Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) for the proposition that an
"attorney's unsworn statements in a brief are not evidence.").

[4]  The 104th anniversary of that plea from a young boy to "Shoeless" Joe Jackson will
be on September 28, 2024, three days from now.

has been no need to implement a hurricane protection plan to deal with scaffolding that is currently in use within the process units at the refinery. Exhibit 5, Declaration of Fermin Rodriguez, ¶¶3–5. To the extent that there is scaffolding within a unit that is no longer needed, Port Hamilton has in place existing procedures to allow it to be removed from the unit (but not from the boundaries of the refinery/terminal). *Id.*, ¶¶6–7. Further, if NIS has a need to inspect scaffolding that is in use, Port Hamilton also has a procedure in place to allow that inspection to occur. *Id.*, ¶8.

In summary, there are procedures in place that address all of NIS's claims relating to the need to secure or inspect scaffolding and thus there is no irreparable injury to NIS. These procedures also address any concerns for the public interest relating to the scaffolding during a hurricane.

Finally, NIS's claim that OSHA regulations require it to take certain steps is not supported by the regulations. The OSHA regulations pertaining to scaffolding are found in Part 1296 of Title 29 of the Code of Federal Regulations. OSHA's inspection regulations only apply to scaffolding that is *in use*. They do not apply to the millions of dollars of scaffolding that NIS had secured aboard 8 flat rack shipping trailers for shipment to the continental United States as part of its efforts to purloin this scaffolding. With respect to scaffolding that is in use, the following inspection regulations apply:

1. Before each work shift, "a competent person" must inspect the scaffolding. 29 C.F.R. § 1926.451(f)(3). The competent person need not be a representative of NIS. *See* 29 C.F.R. § 1926.450(b) (defining competent person as "one who is

capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them").

2. Any time the scaffold is moved, altered, or after any occurrence that could affect its structural integrity, it must be re-inspected by a "competent person." 29 C.F.R. §1926.451(f)(3).

There is absolutely *no* requirement for "annual" inspections. There is no requirement that scaffolding be removed during storms or high winds (and this may be impossible depending upon the work the scaffolding is supporting). Indeed, work on scaffolding *during storms and high winds* is permitted if "a competent person has determined that it is safe for employees to be on the scaffold and those employees are protected by a personal fall arrest system or wind screens."  29 C.F.R. § 1926.451(f)(12).

The procedures described by Fermin Rodriguez in his declaration would allow any necessary inspections to take place.

## CONCLUSION

Port Hamilton has shown, through competent evidence, that the requirements for issuance of a TRO are met. The only reason the case has not proceeded to the preliminary injunction stage at this time is because of the procedural delays deployed by NIS. NIS has offered no competent evidence to address any of the requirements for issuance of a TRO other than on the issue of irreparable injury. And Port Hamilton has shown that NIS's argument on irreparable injury is a red herring. There are already

proper procedures in place to address an approaching hurricane and even when given time to address the scaffolding that had been prepped for shipping, NIS did nothing. NIS invokes OSHA regulations but those regulations do not support its argument.

For the foregoing reasons, Port Hamilton respectfully submits that TRO should be extended until such time as an evidentiary hearing on the motion for preliminary injunction can be held.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Port Hamilton Refining &
Transportation, LLLP

Dated: September 25, 2024

   /s/ Andrew C. Simpson
By:  Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com