IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **PORT HAMILTON REFINING & TRANSPORTATION, LLLP,**<br><br>PLAINTIFF,<br><br>VS.<br><br>**NATIONAL INDUSTRIAL SERVICES, LLC**<br><br>DEFENDANT. | CASE NO. 1:24-CV-00023<br><br>ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION |

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") moves to remand this matter to the Superior Court of the Virgin Islands for the following reasons:

1. National Industrial Services, LLC ("NIS") waived removal by virtue of its conduct in the Superior Court, in which it waited until it received an unfavorable jurisdictional ruling before seeking to remove the case;

2. The Court lacks post-confirmation jurisdiction over the dispute such that there was no basis for removal;

2. The Court is required to abstain from the case;

3. Even if abstention is not mandatory, as a matter of sound exercise of the Court's discretion, it should abstain from the matter.

1

**BACKGROUND**

NIS has based the removal of this action on a description of Port Hamilton's claim that it knows to be false. NIS describes the basis for removal in Paragraph 59 of its Notice of Removal (Doc. No. 1):

> 59. The complaint in this removed action turns entirely on the interpretation of the Asset Purchase Agreement/Sale Order in the Bankruptcy Matter. Claims of this nature—interpreting the Texas Bankruptcy Court's Sale Order are within the core, "arising in" jurisdiction of the federal bankruptcy courts. *See Gov't of the Virgin Islands v. John K. Dema, P.C.*, 2020 VI SUPER 19, ¶ 17, 72 V.I. 404, 412 (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

But Port Hamilton's claim does not rely "entirely on the interpretation of" the Asset Purchase Agreement (APA) or the Sale Order. To the contrary, it does not rely upon *any* interpretation of the APA and Sale Order. Both Port Hamilton and NIS agree that the Sale Order and APA transferred all assets *that were owned by Limetree Bay Refining, LLC* ("LBR") to Port Hamilton.[1] Both Port Hamilton and NIS agree that if the scaffolding assets were not owned by LBR, then the Sale Order and APA did not transfer them to Port Hamilton.

Port Hamilton claims that the scaffolding assets were owned by LBR at the time it filed for bankruptcy and therefore transferred to it along with all of LBR's other assets. As Port Hamilton represented to the Superior Court—in NIS's presence—the Sale Order and Asset Purchase Agreement ("APA") in this case merely establish the

---

[1] The only assets of LBR's that did not transfer to Port Hamilton were certain assets that were specifically defined as "excluded assets." There is no claim that the scaffolding was an "excluded asset."

chain of title that allows Port Hamilton to sue for the theft of equipment that, before LBR filed for bankruptcy belonged to LBR. As undersigned counsel explained in the Superior Court matter:

> If it was an LBR asset at the time the bankruptcy Sale Order was issued, then it transfers to Port Hamilton. If it wasn't and was owned by NIS, then it belongs to NIS. That's all the bankruptcy Sale Order does, and that's all that Judge Lopez[2] said. [Judge Lopez] said that's what [the Sale] Order does. We said [that] before the Bankruptcy Court action was even filed, "Limetree Bay Refinery owned those assets" [scaffolding]. That's an issue of territorial law. If before the Sale Order was entered, Limetree Bay Refinery owned the scaffolding, then it goes to Port Hamilton. If, under territorial law, it didn't, it goes to NIS. Very simple. Nothing to do with bankruptcy. The only thing that the Bankruptcy Court does is say, you get -- you[,] Port Hamilton[,] get LBR's assets.

Exhibit 2, Transcript of Sept. 18, 2024 hearing at 30.

There is no need to interpret the Sale Order or APA when both parties agree that it only transferred assets owned by LBR. The issue in this case is one of territorial law: Did LBR own the scaffold assets at the time it filed for bankruptcy? If so, they belong to Port Hamilton. If not, they do not.[3]

**ARGUMENT**

---

[2] Judge Lopez is the judge presiding over the remnants of the LBR Bankruptcy Case in Houston, Texas. The ruling referenced in this quote is attached as Exhibit 1.

[3] Port Hamilton also acquired the right to repurchase certain scaffolding assets that had been sold to NIS for one dollar, subject to a right to repurchase for one dollar. *See generally*, Verified Complaint (Doc. No. 1-2) at ¶¶16–43a. That asset also transferred with the Sale Order. NIS does not address the right to repurchase in its motion (because it focuses solely on its mischaracterization of Port Hamilton's claim as being based upon the Sale Order) and thus Port Hamilton does not discuss it in this memorandum.

This matter should be remanded to the Superior Court of the Virgin Islands for a number of reasons. First, NIS by its own admission waited until it saw how the Superior Court ruled on a jurisdictional issue it raised and only sought to remove the case after the Superior Court decided that issue against it. Second, this Court lacks post-confirmation jurisdiction over this dispute between two non-debtors. Third, mandatory abstention applies. And fourth, even if mandatory abstention does not apply, the Court should exercise its discretion and abstain.

1. **NIS WAIVED REMOVAL THROUGH ITS CONDUCT.**

This matter was filed, and NIS notified of the action, on August 20, 2024. See Doc. No. 1-4 at 3 (Certificate of Service showing service via email of Verified Complaint and Motion for Temporary Restraining Order). NIS attended the August 28, 2024 evidentiary hearing on the motion for preliminary injunction, but argued that the Superior Court lacked jurisdiction. When the Superior Court indicated that it would take the jurisdictional matter under advisement and proceed to the merits of the preliminary injunction, NIS announced that it was not prepared to go forward. It then agreed to an extension of the TRO until the evidentiary hearing could be rescheduled. The evidentiary hearing was rescheduled for September 18, 2024 and the parties were directed to provide briefs on the jurisdictional issue by September 13, 2024.

At no time from August 20 until September 18, 2024 did NIS attempt to remove the case from the Superior Court. At the September 18, 2024 hearing, the court first heard argument on jurisdiction. It was not until the Superior Court ruled against NIS and concluded that it had jurisdiction to hear the case that NIS suddenly announced

4

> Your Honor, we are at this moment filing a Notice of Removal and that should be filed shortly. For that reason, I would like to at least adjourn the hearing until the Court has reviewed the Notice to Remove.

Exhibit 2 at 47.

NIS then explained,

> *Your Honor, we contemplated doing that [removing the case] a day ago, a week ago, and all of that,* but we wanted to give this Court -- Mr. Simpson brought this matter before this Court, and we wanted to give Your Honor the time to think about it carefully. You obviously did. You looked at all of our briefs. You made your decision. And you also have given me one hour to file my Notice of Removal. I think as a courtesy from the Court to me, I should be permitted that one hour to file my Notice of Removal. *We wanted to hear what the Court's ruling was. We stood by.*

Exhibit 2 at 50 (emphasis added).

In other words, NIS waited until it learned that the Court had ruled against it before deciding to remove the case.

When a removing party actively participates in a case before removal, it can waive the right to remove. *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir.2004) ("'A state court defendant may lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court ... [w]aiver will not occur, however, when the defendant's participation in the state action has not been substantial or was dictated by the rules of that court . . . .'" (citing Charles A. Wright,

5

*et al.*, 14B Federal Practice & Procedure § 3721 (2003))).[4]

Here, NIS could have removed the case to this Court and asserted its argument that the bankruptcy court had exclusive jurisdiction; but, it chose not to do so. Instead, it presented that argument to the Superior Court, as indicated in its jurisdictional memorandum submitted to that court: "For the reasons stated below, the Texas Bankruptcy Court retains exclusive jurisdiction over this matter." Doc. No. 1-33 at ECF p.2. *See also id.* at ECF p.7 (arguing that "district courts shall have original and exclusive jurisdiction of all cases under Title 11, 28 U.S.C. §1334 (a), . . ."; and *id.* at ECF p.11:

> Given this, the Texas Bankruptcy Court exclusively retains jurisdiction. PHRT should have properly filed its claims, which arise under the Texas Bankruptcy Court APA and Sale Order, in the court that has jurisdiction over this matter: the United States Bankruptcy Court for the Southern District of Texas.

NIS lost that argument before the Superior Court:

> The issue of the parties' ownership of the scaffolds, the Court finds, are non-core issues over which this Court can retain that jurisdiction as it clearly implicates [territorial] law. No facts or law derived from the bankruptcy matter are necessary to resolve these claims.

Exhibit 2 at 47.

It was only after losing that argument that NIS removed the case.

---

[4] Port Hamilton does *not* assert that NIS waived the right to remove by opposing the TRO. It had no choice but to respond to the motion for TRO on an expedited basis. But there was no need for NIS to await the Superior Court's ruling on the jurisdictional issue and if truly believed that the Superior Court lacked jurisdiction, removal should have been accomplished at the earliest possible opportunity rather than waiting to see if it could get a favorable ruling from the Superior Court.

Waiver of the right to remove is determined on a case-by-case basis. *Banks v. Hous. Auth. of DeKalb C'nty.*, 32 F. Supp. 3d 1296, 1298 (N.D. Ga. 2014). One of the factors to be considered when determining whether a defendant has waived the right of removal is "whether the removal can be characterized as an appeal from an adverse judgment of the state court." *Fain v. Biltmore Securities, Inc.*, 166 F.R.D. 39, 40 (M.D. Ala. 1996). A defendant " may not, after having argued and lost an issue in state court, remove the action to federal court for what is in effect an appeal of the adverse decision." *Kiddie Rides USA, Inc. v. Elektro-Mobiltechnik GMBH*, 579 F. Supp. 1476, 1480 (C.D. Ill. 1984).

NIS's removal is a direct effort to appeal or skirt the jurisdictional ruling of the Superior Court. It admitted as much in its colloquy with the court, informing the court that it held off on removing until it received the court's (adverse) ruling. And, upon removal, it is again arguing the same issue that it lost in the Superior Court. Accordingly, NIS should be deemed to have waived the right to remove the case to this Court.

2. **THE COURT LACKS POST-CONFIRMATION JURISDICTION OVER THE CASE.**

As stated in NIS's Notice of Removal (Doc. No. 1 at 7, ¶57), the bankruptcy court presiding over LBR's bankruptcy entered it Confirmation Order in May 2022 with an effective date for the plan in June 2022. This is therefore a post-confirmation dispute.

Bankruptcy court jurisdiction is created in 28 U.S.C. § 1334. Once confirmation occurs, however, the bankruptcy court's jurisdiction "shrinks." *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). As the Third Circuit has explained,

although "the scope of bankruptcy court jurisdiction diminishes with plan confirmation, bankruptcy court jurisdiction does not disappear entirely." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004). The Fifth Circuit has further explained (relying upon the Third Circuit):

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. The Act does not define "related" matters. Courts have articulated various definitions of "related", but the definition of the Court of Appeals for the Third Circuit appears to have the most support: "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."

*Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis supplied by the *Matter of Wood* court). Indeed, even if a proceeding is "core," that fact is insufficient to confer subject matter jurisdiction, because "'whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction.'" *In re Resorts Int'l*, 372 F.3d at 163 (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir.1991)).

The Third Circuit has since reinforced the concept, explaining that in the post-confirmation setting, bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates "the logical possibility that the estate will be affected." *In re Federal–Mogul Global, Inc.*, 300 F.3d 368, 380 (3d Cir.2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1148 (2003). As yet another example, in *In*

*re Resorts Int'l*, the proceeding lacked a close nexus to the bankruptcy plan, affected only matters collateral to the bankruptcy process; resolution of the claims would not affect the bankruptcy estate; would have only an incidental effect on the reorganized debtor; would not interfere with the implementation of the reorganization plan; and, although it would affect some former creditors, they did not have a close nexus to the bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to certain litigation claims. Consequently, the court lacked bankruptcy jurisdiction. *In re Resorts Int'l*, 372 F.3d at 169. The same factors that caused the *In re Resorts Int'l* court to conclude that bankruptcy jurisdiction did not exist apply with even stronger force here because the factors are identical except that this litigation will not affect former creditors.

While it is true that a bankruptcy court's post-confirmation shrinking jurisdiction always allows the court to interpret its prior orders, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009), that role is limited to a true interpretation of the prior order. For example, the bankruptcy court that presided over the LBR bankruptcy was recently confronted with a similar issue in a dispute between Port Hamilton and Limetree Bay Terminals, LLC ("LBT"). There, the actual language of the Sale Order was at least arguably at issue because the Sale Order referred to certain "above-grade refinery assets" that were in dispute.[5] The bankruptcy court exercised jurisdiction and made it

---

[5] LBT argued that the Sale Order expressly gave it ownership over the above-grade refinery assets." Port Hamilton argued that the Sale Order did not determine ownership and merely preserved ownership rights "if any." The bankruptcy court agreed with Port Hamilton.

clear that the Sale Order did not determine such ownership and "[i]f the Debtors did not own an undivided interest in an asset . . . such interest was not sold to Purchaser under the Sale Order." Exhibit 1 at 4. Critically, however, the court limited its ruling strictly to it jurisdiction—the interpretation of the Sale Order—and abstained from ruling on the "underlying ownership rights of any assets." *Id.* at 5.

The bankruptcy court's decision to restrict its ruling solely to interpreting its order is consistent with the decisions reached by other courts interpreting *Travelers*. For example, in *In re Murray Energy Holdings Co.*, Case No. 19-56885, 2024 WL 4024427, at *14 (Bankr. S.D. Ohio Aug. 30, 2024) the court recognized that "*Travelers* does not suggest that arising-in jurisdiction to interpret and enforce prior orders expands a bankruptcy court's § 1334(b) jurisdictional reach to non-bankruptcy matters where, as here, related-to subject-matter jurisdiction never existed." *See also In re Superior Air Parts, Inc.*, 516 B.R. 85 (Bankr. N.D. Tex. 2014) (concluding that it did not have subject matter jurisdiction "because this dispute goes well beyond enforcing the Plan and Confirmation Order," *id.* at 92, even though it was brought before the court as a motion to enforce the terms of the Third Amended Plan of Reorganization. *Id.* at 87).

Here, the dispute between Port Hamilton and NIS is a dispute between two non-debtor parties. It does not require interpretation of the Sale Order as the parties agree that the Sale Order only transferred LBR's assets and did not make any determination specifically relating to LBR's scaffolding assets (and the recent decision of the bankruptcy court (Exhibit 1) makes it plain that the Sale Order did not determine underlying ownership rights). The Superior Court agreed when it found that

10

the ownership of the scaffolding is a non-core issue. Exhibit 2 at 47. The dispute will have no possible impact upon the Debtors, their obligations, or the distributions to their creditors. There is no "logical possibility" that this dispute will affect the bankruptcy estate of the debtors. Accordingly, neither this Court nor the bankruptcy court have subject matter jurisdiction.

3. **THE RETAINED JURISDICTION LANGUAGE IN THE APA DOES NOT CREATE JURISDICTION THAT DOES NOT OTHERWISE EXIST.**

Even if a plan of reorganization or confirmation order provides that the bankruptcy court will retain jurisdiction, such a retention provision is still subject to the requirement that the bankruptcy court have jurisdiction. As the Third Circuit explains, "[r]etention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction 'cannot be conferred by consent' of the parties." *Id.* at 161 (quoting *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir.1996).

4. **COURTS RECOGNIZE THAT THE MERE INVOLVEMENT OF A SALE ORDER IS INSUFFICIENT TO CONFER POST-CONFIRMATION SUBJECT MATTER JURISDICTION.**

As already explained, this case does not involve interpretation of the Sale Order. The Sale Order and the APA are merely the documents that establish the transfer of LBR's assets to Port Hamilton. The issue in this case is whether those assets were owned by LBR *before* the Sale Order was entered and the APA signed. But even in a case where a pending state court action seeks to *invalidate* the sale order, a bankruptcy court lacks post-confirmation jurisdiction where it does not involve a substantial

11

question of bankruptcy law. *See In re Ray*, 624 F.3d 1124, 1127 (9th Cir. 2010).

In *In re Ray*, a potential purchaser held a right of first refusal for a piece of real property owned by the debtor and a non-debtor business partner, but the bankruptcy court approved a sale to a third party and found the exercise of the right of first refusal was attempted improperly. *Id.* at 1129. The unsuccessful purchaser filed suit post-confirmation action in state court against the debtor, non-debtor seller, and the purchaser to enforce its alleged right of first refusal, and the debtor went back to the bankruptcy court, which granted summary judgment against the unsuccessful purchaser. *Id.* The Ninth Circuit overruled the bankruptcy court, finding the dispute arose under state law rather than only in the context of a bankruptcy case for purposes of "arising in" and "arising under" jurisdiction. *Id.* at 1131. The arguments in favor of "related to" jurisdiction fared no better, as the state court could handle the non-meritorious claims:

> There is no doubt that [the unsuccessful buyer's] claims would undermine the effect of the bankruptcy court's well-reasoned determination that Sellers did not violate the right of first refusal. However, such attacks in a second court are routine-and routinely rejected, and [the non-debtor seller] offers no convincing argument why that fact alone creates jurisdiction under § 1334(b). Therefore, the bankruptcy court did not retain "related to" jurisdiction for this breach of contract action that could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law.

*Id.* at 1135 (citation omitted).

As another example, the Seventh Circuit in *Zerand-Bernal Group, Inc. v. Cox* held that the bankruptcy court lacked jurisdiction to enjoin a state court successor liability

12

action brought post-confirmation against a bankruptcy purchaser in violation of a sale order's "free and clear" provision. *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994). As the Seventh Circuit reasoned, bankruptcy jurisdiction could not be so broad as to give courts powers to hear bankruptcy sale disputes indefinitely, because "[o]therwise anyone who could trace his title to a bankrupt could invoke federal jurisdiction to settle disputes affecting that property." *Id.* at 162 (quoting *In re Xonics*, 813 F.2d 127, 131 (7th Cir. 1987)).

5. **THIS COURT IS REQUIRED TO ABSTAIN FROM THE CASE.**

As demonstrated in the Verified Complaint, Port Hamilton has meritorious claims that the property at issue belongs to it. Those claims arise under territorial law that are best adjudicated by the Superior Court of the Virgin Islands. Under 28 U.S.C. § 1334(c), the Court is required to abstain from hearing this dispute. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in [federal] court . . . absent [§ 1334 jurisdiction], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). In *In re Freehand H.J., Inc.*, 2007 WL 1775368 (Bankr. E.D. Pa. June 19, 2007), which also involved a case removed from a state court under 11 U.S.C. § 1452, the court summarized the Third Circuit's standards for determining whether mandatory abstention under Section 1334(c)(2) applied:

13

> According to the Third Circuit, if a timely motion is made under § 1334(c)(2), a court "*must* abstain" if the following five requirements are met: (1) a proceeding is based on state law claims or state law cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.[6] *Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir.2006) (emphasis in original).

*In re Freehand H.J., Inc.*, 2007 WL 1775368 at *1.

All of those requirements are met here. First, Port Hamilton's case arises under Virgin Islands law. The issue of ownership of the scaffolding assets is based upon a determination as to whether—prior to the filing of bankruptcy (and at the time of the entry of the Sale Order)—LBR or NIS owned the scaffolding. There is no dispute that if the scaffolding was owned by LBR, it passed to Port Hamilton pursuant to the Sale Order and APA; likewise, if it was not owned by LBR (and was not otherwise subject to a right to repurchase by LBR), it passed to NIS.

Second, the Superior Court expressly held that the matter was non-core:

> The issue of the parties' ownership of the scaffolds, the Court finds, are non-core issues over which this Court can retain that jurisdiction as it clearly implicates court law. No facts or law derived from the bankruptcy matter are necessary to resolve these claims.

---

[6] "[T]imeliness in this context must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed." *Stoe v. Flaherty*, 436 F.3d 209, 219 (3d Cir. 2006), as amended (Mar. 17, 2006)

14

Doc. No. 11-1 at 47 (Transcript of September 18, 2024 Superior Court Hearing). That this is a non-core proceeding is now the Law of the Case.[7]

Even if this Court were to revisit the Superior Court's ruling, the dispute is a non-core proceeding, as it neither "arises under" the Bankruptcy Code nor "arises in" a bankruptcy case. "'Arising under' jurisdiction involves causes of action created or determined by a statutory provision of title 11." *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 606 (S.D. Tex. 1999) (citing *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987). Meanwhile, "'[a]rising in' jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside bankruptcy." *Id.* (citing *Wood*, 825 F.2d at 97). Here, this dispute between two non-debtor parties does not arise in a bankruptcy case or arise under the Bankruptcy Code. There is no assertion that some provision of the Bankruptcy Code created the rights either NIS or Port Hamilton are trying to assert. NIS cannot create a core bankruptcy issue by asserting that the Sale Order determined who owned the scaffolding. The Sale Order plainly did not make that determination. In other words, NIS's asserted rights were not created by bankruptcy law: "If the causes of action

---

[7] "After removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed." *In re Diet Drugs*, 282 F.3d 220, 231–32 (3d Cir.2002). The law of the case doctrine generally applies to decisions made by a state court prior to removal to federal district court. *See Rekhi v. Wildwood Industries, Inc.*, 61 F.3d 1313, 1317–18 (7th Cir.1995). Under the law of the case doctrine, a court may review a matter previously decided in any of three circumstances: (1) where there has been an intervening change of controlling law, (2) where new evidence has become available, or (3) where there is a need to correct a clear error or prevent manifest injustice. *See United States v. Minicone*, 26 F.3d 297, 300 (2d Cir.1994).

15

asserted exist under state law and stand independent of the bankruptcy case, they do not 'arise in' a bankruptcy case." *In re Dune Energy, Inc.*, 575 B.R. 716, 727 (Bankr. W.D. Tex. 2017) (citing cases). Thus, the second requirement is met.[8]

Third, federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case. Jurisdiction for purposes of this analysis is "measured at the time of commencement of the action, and not at the time of filing of notice of removal by Defendant." *Siskin Steel & Supply Co. v. Highland N., LLC*, No. 3:12-CV-105, 2013 WL 23906, at *9 (W.D. Pa. Jan. 2, 2013) (footnote omitted).

Fourth, the action was quite evidently filed in a territorial court with jurisdiction. And finally, the matter can be timely adjudicated in the Superior Court and, given that Court's comparative familiarity with Virgin Islands law combined with the logistics of Virgin Islands lawyers having to litigate a local dispute in Texas, it is submitted that the Superior Court is in a better position to timely adjudicate the case than the bankruptcy court in Texas.

4. **EVEN IF ABSTENTION IS NOT MANDATORY, AS A MATTER OF SOUND EXERCISE OF THE COURT'S DISCRETION, IT SHOULD ABSTAIN FROM THE MATTER.**

Alternatively, to the extent abstention is not mandated under § 1334(c)(2), this Court should still exercise its discretion to abstain under § 1334(c)(1). That is exactly what the LBR bankruptcy court did its recent ruling: It interpreted the Sale Order and then abstained from the underlying territorial law issues. Under 28 U.S.C. § 1334(c)(1),

---

[8] In the bankruptcy court's recent ruling (Exhibit 1), it found it was not required to abstain. However, that was because it was exercising jurisdiction to interpret its Sale Order (and limited its jurisdiction to only that issue). Here, it is clear that there is no need to interpret the Sale Order. The bankruptcy court would simply restate its holding in its recent order.

16

"courts have broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996).

A court can permissively abstain if not all of the elements for mandatory abstention are met. *See id.* at 1206-07 (upholding permissive abstention where claimant's "claims hinge solely on questions of state law and invoke no substantive right created by federal bankruptcy law"). Whether a court should permissively abstain "will, of necessity, be driven by equitable considerations germane to that case." *In re Schlotzsky's, Inc.*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006).

> Courts in the Third Circuit have employed either a seven-factor or twelve-factor test to determine whether permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) is appropriate. *Compare Jazz Photo Corp. v. Dreier LLP*, 2005 WL 3542468, at *7 (D.N.J. December 23, 2005) (seven-factor test) with *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006) (twelve-factor test). The factors in each set are "substantially similar," and for either set used, "[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Shalom Torah Centers v. Philadelphia Indem. Ins. Companies*, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011).

*In re: John Bradley Jr.*, Case No. 3:14-CV-02500, 2024 WL 1389123, at *7 (M.D. Pa. Apr. 1, 2024). The twelve factors considered by the courts[9] are:

(1)   The effect or lack thereof on the efficient administration of the estate if a

---

[9] "The Third Circuit has never adopted any factors analyzing permissive abstention because appeals of district court decisions involving permissive abstention, whether or not the court abstains, are barred." *Monmouth Inv., LLC v. Saker*, Case No. CIV.09-3063 (FLW), 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010) (internal quotation marks omitted).

17

      court recommends abstention;

(2)     The extent to which state law issues predominate over bankruptcy issues;

(3)     The difficulty or unsettled nature of the applicable state law;

(4)     The presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5)     The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)     The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)     The substance rather than form of an asserted "core" proceeding;

(8)     The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     The burden on the bankruptcy court's docket;

(10)     The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)     The existence of a right to a jury trial; and

(12)     The presence in the proceeding of nondebtor parties.

*In re D'Angelo*, 475 B.R. 424, 440-442 (Bankr. E.D. Pa. 2012), *aff'd*, 491 B.R. 395 (E.D. Pa. 2013); *accord, In re Denton County Elec. Cooperative, Inc.*, 281 B.R. 876, 881, and n.10-11 (Bankr. N.D. Tex.) (citing cases).

    Here, all of the factors support permissive abstention:

a. As the bankruptcy cases are post-confirmation, there are no estates to administer and resolution of Port Hamilton's claims will have no impact upon the estate;

b. The issues to be determined derive from the non-bankruptcy laws of the U.S.

Virgin Islands;

c. The "state" law at issue is particular to the U.S. Virgin Islands;

d. There was already a pending proceeding commenced in the Superior Court of the Virgin Islands;

e. There is no independent jurisdictional basis, and NIS has not asserted any jurisdictional basis other than 28 U.S.C. § 1334(b);

f. The proceeding is remote to the bankruptcy cases because those cases have been confirmed, the parties involved are both non-debtors, and the dispute will not impact the Debtors, the Liquidating Trust, or distributions to creditors;

g. The substance of this proceeding is one based on territorial law as described in detail in the Verified Complaint, even though NIS has sought to recharacterize Port Hamilton's claims;

h. There is no need to sever bankruptcy and non-bankruptcy claims as all of the claims can be decided in the Superior Court of the Virgin Islands;

i. The proceedings will present a burden to the Court's docket given the history of the dispute and the need to interpret U.S. Virgin Islands law;

j. NIS's removal of the case combined with the motion to transfer venue likely represents an attempt to seek an alternative forum especially given its filing in the Houston bankruptcy case of a motion to enforce the Sale Order on September 25, 2024[10];

k. The proceeding is one for which there is a right to trial by jury; and

---

[10] Port Hamilton just received this motion but will oppose it on grounds similar to those raised in this motion to remand.

l.  The proceeding only involves non-debtor parties.

Given that all of these factors weigh in favor of abstention, the Court should exercise its discretion and permissively abstain to the extent it finds mandatory abstention inapplicable here.

## CONCLUSION

The motion to remand should be granted for all of the reasons set forth above: The notice of removal was untimely; the Court lacks bankruptcy jurisdiction; abstention is mandatory; and, even if it is not, the court should exercise its discretion and abstain.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: September 27, 2024

   /s/ Andrew C. Simpson
By: Andrew C. Simpson
VI Bar No. 451
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com